**TRANSCENTRAL OIL CORPORATION,**
Plaintiff-Appellant,

v.

**CALIFORNIA OIL COMPANY,**
Defendant-Appellee.

No. 17898.

United States Court of Appeals,
Seventh Circuit.

Aug. 28, 1970.

---

Richard James Stevens, William J. Stevens, Chicago, Ill., for plaintiff-appellant.

H. Templeton Brown, Thomas B. McNeill, Lee N. Abrams, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, KERNER, Circuit Judge, and DOYLE, District Judge.[1]

JAMES E. DOYLE, District Judge.

This is a diversity action.[2] The case was tried to a jury. At the close of the plaintiff's evidence, the defendant's motion for a directed verdict was granted. Plaintiff appeals. We affirm.

Viewed most favorably to the plaintiff, the evidence established the facts set forth in this opinion.

Defendant (California), a California corporation and a subsidiary of Standard of California, manufactured lubricating oils and greases, among other products, at the times in question. Plaintiff (Transcentral), an Illinois corporation organized in 1946, distributed California's lubricating oils and greases in the midwest from 1946 until November 1963. In 1958 S. N. Daily became president of Transcentral.

From 1956 through 1962, the number of gallons of California lubricating oil and grease sold by Transcentral increased each year, and sales for the first ten months of 1963 were only slightly lower than the 1962 pace. In connection with these sales, and those preceding 1956, Transcentral solicited business, hired employees, rented offices, maintained warehouse facilities, and arranged for deliveries. California had a bonus plan for its distributors from 1960 through 1963, and in each of these years Transcentral qualified for the bonus.

Over the years the dealership was the subject of a series of contracts between Transcentral and California, of which the most recent was dated March 10, 1961. This contract (which was basically similar to those which preceded it) defined a geographical area in which Transcentral enjoyed a non-exclusive dealership. The contract was for one year, but it was to continue indefinitely thereafter, subject to termination by either party on 90 days' notice. The written contract specified that it contained the entire agreement; that there were no other representations; and that

---

1. District Judge Doyle of the Western District of Wisconsin is sitting by designation.

2. The parties appear to agree that the substantive law of Illinois governs the case.

there could be no modification or waiver unless the same were in writing. Over the years California had not undertaken to sell its products directly to customers which Transcentral had obtained; and when territory had occasionally been withdrawn from Transcentral's dealership area, California had paid to Transcentral a sum equal to two cents per gallon for all lubricating oils and greases being sold by Transcentral in the withdrawn territory at the time of the termination, multiplied by a number equal to the number of years during which Transcentral had serviced the area.

Among the customers which Transcentral had obtained for California's products were Inland Steel Company, Youngstown Sheet and Tube Company, and Mid-Town Petroleum, Inc. In July 1963 California commenced to sell its products directly to Inland and Youngstown, and in September 1963 to Mid-Town, thus depriving Transcentral of commissions on sales to these customers. Transcentral protested these actions by California, demanding to be compensated for the lost commissions and to be protected against further incursions among its customers. California made no such compensation and gave no such assurances. On October 30, 1963, the distributorship was terminated.

The amended complaint consists of two counts. The first alleges that it was an implied term of the distributorship contract that California would not commence to sell its products directly to customers which Transcentral had obtained; that the two-cents-per-gallon formula, referred to above, was also an implied term of the distributorship contract with respect to customers lost to Transcentral by reductions in its distributorship territory; that in 1960, California began to harass Transcentral into giving up its distributorship by means of making unreasonable demands, then took the three accounts described above, then through economic coercion forced the termination of October 30, 1963; and that California is liable to Transcentral in the sum of two cents per gallon for each of the 564,330 gallons sold in 1962, multiplied by eighteen, representing the eighteen years during which Transcentral had served as a California distributor. The second count seems to sound in tort, although this is not wholly clear; it alleges that, by the actions described above, California maliciously destroyed Transcentral's property right in the distributorship, upon which the amended complaint sets a value of $250,000.

In granting the defendant's motion for a directed verdict, the district court entered findings, none of which is inconsistent with the statement of facts which appears above in this opinion. Its findings and conclusions were to the effect that the allegedy implied terms of the contract were non-existent, and that the conduct of California was not in breach of the contract and was not tortious.

We find it unnecessary to determine whether reasonable men could differ on this record with respect to any matters other than that to which we now turn. We agree with the district court that on the basis of the evidence presented by plaintiff Transcentral, reasonable men could not differ with respect to the following factual propositions.

In April 1963, Daily, as president and sole stockholder of Transcentral, proposed to California that the distributorship be terminated; the proposal included a proposal that Transcentral receive about $200,000, based on Daily's conception of how the two-cents-per-gallon formula should be computed. During the spring, summer, and early fall of 1963, discussions continued between Daily and representatives of California concerning the basis upon which the distributorship might be terminated. There was disagreement concerning the dollar amount, if any, to be paid by California. There was also disagreement whether the sum, whatever it was to be, was to be paid to Transcentral or to Daily.

On October 30, 1963, the parties entered into two interrelated written agreements. Under the first, which was between California and Transcentral, the March 10, 1961, distributorship agree-

ment was terminated; it was silent on whether either party reserved any claims against the other under the 1961 agreement. Under the second, which was between California and Daily, California agreed to pay Daily $35,000 for advisory and consultative services, upon California's request, for one year; the second agreement referred to the first, referred to Transcentral's intention to discontinue its marketing of lubricating oils and greases, and referred to Daily's intention to liquidate and dissolve Transcentral. In January 1964, Daily stated to others that he had "sold" the lubricating oils part of his business (he and Transcentral had been distributors of other companies' products, not relevant here).

Daily's annual salary as president of Transcentral was $1300 per month. Transcentral's before-tax net profits were $4700 in 1961, $3700 in 1962, and $3800 in the first ten months of 1963; and its net worth in 1963 was $24,000.

Daily received the $35,000 provided for in the October 30, 1963 agreement. He was asked by California to make one short business trip, and he did so. Transcentral retained its assets after the termination of the distributorship.

On January 10, 1964, Transcentral paid California $1,046.72 for certain starting fluid which Transcentral had purchased during the distributorship. On February 6, 1964, California paid Transcentral $12,180.45 due under California's bonus plan for 1963, and $6,072.16 for inventories repurchased from Transcentral by California.

The district court found and concluded that the October 30, 1963, agreements constituted a complete settlement of all disputes between Transcentral and California, and that they are a bar to the claims alleged here. We agree, and we agree and conclude that reasonable men could reach no other conclusion from the evidence presented by the plaintiff. The transactions which occurred subsequent to October 30, 1963—the payment by Transcentral for the starting fluid, the purchase by California of Transcentral's inventory, and the payment by California

of a 1963 bonus—cannot reasonably be construed as revealing an intention of the parties that their rights under the March 10, 1961, distributorship survived the termination.

For the reasons stated herein, the district court's order granting defendant's motion for a directed verdict is hereby affirmed.